**ORIGINAL**

1  DAVID F. FAUSTMAN, State Bar No. 081862
   FOX ROTHSCHILD LLP
2  235 Pine Street, Suite 1500
3  San Francisco, California 94104
   Tel: 415-364-5540
4  Fax: 415-391-4436

5  Attorneys for Defendant
   MEDICIS PHARMACEUTICAL CORPORATION
6

7

8                    UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                                    EM

11  KIMBERLEA MCMANIGAL, an                Case No.
    individual, and ROES 1 through 50,
12                                         **NOTICE OF REMOVAL OF ACTION**
13                                         **UNDER 28 U.S.C. §1332 (DIVERSITY)**
               Plaintiffs,
14                                         Complaint filed: July 23, 2007
         vs.
15
    MEDICIS PHARMACEUTICAL
16  CORPORATION, a Delaware
    corporation, ROBERT NEVIN, an
17  individual, and DOES 1 through 50,

18             Defendants.

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL

WC1 13881v1 09/20/07

**TO THE CLERK OF THE ABOVE-ENTITLED COURT**:

**PLEASE TAKE NOTICE** that Defendant MEDICIS PHARMACEUTICAL CORPORATION ("Medicis") removes to this Court the state court action described below, based on the Court's removal jurisdiction under 28 U.S.C. Section 1441, and the Court's diversity jurisdiction under 28 U.S.C. Section 1332(a).

**Procedural History**

1.     On or about July 23, 2007, Plaintiff KIMBERLEA MCMANIGAL commenced an action in the Superior Court of California in and for the City and County of San Francisco, entitled Kimberlea McManigal, an individual, and Roes 1 through 50, v. Medicis Pharmaceutical Corporation, a Delaware corporations, Robert Nevin, an individual, and does 1 through 50, as Case No. CGC-07-465398. A true and correct copy of the Complaint served on Medicis is attached hereto as Exhibit 1.

2.     Medicis first received a copy of the Complaint on August 21, 2007, when a copy of the Summons and Complaint was served at Medicis's Scottsdale, Arizona headquarters. A true and correct copy of the Summons served on Medicis is attached hereto as Exhibit 2. A true and correct copy of Medicis's Answer filed in the state court action is attached hereto as Exhibit 3.

3.     Exhibits 1 through 3 comprise all process, pleadings and orders served upon Medicis in the State Action.

4.     This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. section 1332 and is one which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. section 1441 because it is a civil action between citizens of different states and the matter in controversy exceeds the sum of \$75,000.00, exclusive of interest and costs.

**Citizenship of the Parties**

5.     Medicis is informed and believes that Plaintiff was, and still is, a citizen of the State of California.

6.     Defendant Robert Nevin ("Nevin") was, at the time of the filing of this action, and still is, a citizen of the State of New York. Medicis is informed and believes that Nevin has not

1    been properly served in this action.

2    7.    Medicis was, at the time of the filing of this action, and still is, a corporation

3    incorporated under the laws of the State of Delaware, having its principal place of business in

4    Arizona. Medicis is the only defendant that has been properly served summons and complaint in

5    this action.

6    8.    At all times alleged in the complaint through the present, Medicis's executive

7    office and principal place of business has been in Scottsdale, Arizona. Medicis's executives,

8    officers, and the Chief Financial Officer are all located in Arizona. All decisions regarding the

9    company's administration, business strategy, and finances are made in Arizona. The majority of

10   Medicis employees work in Arizona. (See Declaration of Linda Hanks, filed herewith, at ¶¶ 2, 4.)

11   9.    Medicis employs individuals in 33 states and in four Canadian provinces. A

12   substantial predominance of Medicis's business activities, however, occurs in Arizona. (See

13   Declaration of Linda Hanks at ¶ 2.) A corporation's principal place of business is the state which

14   contains a substantial predominance of corporate operations. See Tosco Corp. v. Communities

15   for a Better Environment, 236 F.3d 495, 500 (9th Cir. 2001) (the "place of operations" test should

16   be used to determine a corporation's principal place of business). Therefore, Arizona is

17   Medicis's principal place of business. Furthermore, the majority of Arizona's executive and

18   administrative functions are performed in Arizona. (See Declaration of Linda Hanks at ¶ 2).

19   Where no single state contains a "substantial predominance" of a corporation's business

20   activities, the court must apply a "nerve center test" to determine its principal place of business.

21   See Tosco, 236 F.3d at 500. Under that test, a corporation's principal place of business is the

22   state where the *majority* of its executive and administrative functions are performed. Id. As set

23   forth in paragraph 8 above, that state is Arizona. It is clear, therefore, that Medicis' principal

24   place of business is Arizona.

25   10.   Based on the foregoing, complete diversity exists between Defendants and the

26   Plaintiff.

27

28

)X ROTHSCHILD LLP
5 PINE STREET
IITE 1500
N FRANCISCO, CA 94104

WCI 13881v1 09/20/07

1    **Amount in Controversy**

2        11.    After conducting a reasonable and good faith investigation, Medicis is informed

3    and believes and on that basis alleges that the amount in controversy as to the Plaintiff exceeds

4    the sum of $75,000.00, exclusive of interest and costs.

5        12.    That the amount in controversy exceeds $75,000 is clear from the allegations in

6    the Complaint. Plaintiff alleges causes of action for: (1) discrimination based on sex under

7    Government Code § 12940(a); (2) harassment based on sex under Government Code § 12940(j);

8    (3) failure by employer to take corrective action regarding harassment based on sex under

9    Government Code § 12940(k); and (4) intentional infliction of emotional distress.

10       13.    Plaintiff seeks compensatory, general, and special damages, as well as attorneys'

11   fees and costs (Complaint, Prayer For Relief.) Plaintiff also seeks unspecified exemplary and

12   punitive damages. (Complaint, Prayer For Relief.) There is no cap on damages for claims in

13   civil actions brought under the Fair Employment and Housing Act, see Government Code

14   § 12970, or for Plaintiff's claim of intentional infliction of emotional distress.

15       14.    As the Plaintiff has not specified any amount in damages she is seeking, "...the

16   court may examine facts in the removed petition." Conrad Assoc. v. Hartford Accident &

17   Indemnity Company, 994 F. Supp. 1196, 1998 (N.D. Cal. 1998). The amount in controversy

18   includes all damage claims as well as "punitive damages when they are recoverable as a matter of

19   law." Simmons v. PCR Technology, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002); Richmond v.

20   Allstate Insurance Company, 897 F.Supp. 447 (S.D. Cal. 1995); Miller v. Michigan Millers Ins.

21   Company, 1997 WL 136242 (N.D. Cal. 1997). Medicis can establish probable punitive damages

22   by introducing evidence of jury verdicts in cases involving analogous facts.  Simmons, supra, at

23   1033 (jurisdictional amount was established based on punitive damage awards from similar

24   cases).

25       15.    There are numerous jury verdicts which reflect the potential for large jury awards

26   in California for claims similar to the ones alleged in Plaintiffs' Complaint. See Elliott v. City of

27   Gardena, 2001 WL 1255712 (Cal.Superior) (female police sergeant awarded $1,650,000 for

28   emotional distress damages based on a sexual discrimination claim); Quinn v. Barry & Company,

)X ROTHSCHILD LLP
S PINE STREET
ITE 1500
N FRANCISCO, CA 94104

WCI 13881v1 09/20/07

4
NOTICE OF REMOVAL

1   2001 WL 732077 (Cal.Superior) (female administrative assistant awarded $230,000 for sexual

2   harassment, discrimination, wrongful termination and intentional infliction of emotional distress

3   claims, of which $110,000 was in compensatory damages and $120,000 in punitive damages, plus

4   attorneys' fees); Carter v. Richard Ellis, 2001 WL 34109371 (Cal.Superior) (employer found to

5   have discriminated against employee on basis of age and gender and ordered to pay $420,861 in

6   compensatory damages and $600,000 in punitive damages ($1,020,861) ); Belander v. The

7   Restaurant Enterprises Group, Inc., 1991 WL 632868 (Cal.Superior) (waitress awarded $597,000

8   for age discrimination claim against restaurant, $305,500 of which was compensatory damages

9   and attorneys' fees, $296,500 was punitive damages); DeVille v. City of Compton, 1996 WL

10   341815 (Cal.Superior) (female firefighter trainee awarded $99,500 for sexual harassment and

11   retaliation claims, of which $10,500 was general damages, $73,000 was special damages, and

12   $16,000 was punitive damages); Shimazu v. Amalgamated Acme, 1997 WL 638867

13   (Cal.Superior) (plaintiffs awarded $260,000 for sexual harassment and sexual orientation

14   harassment claims); Harvey v. Sybase, Inc., 2004 WL 3828468 (Unknown State Ct.) (female

15   Filipino human resources director awarded $1,800,000 for racial and sex discrimination and

16   retaliation damages, of which $1,300,000 was past wages and $500,000 was punitive damages).

17   Trial digests for these cases are attached to the attached Declaration of Cristina K. Olivella as

18   Exhibits 4 through 10.

19       16.   Plaintiff's claims and requests for damages are similar to these cases. Should

20   Plaintiff prevail, she would be entitled to compensatory and punitive damage awards far in excess

21   of the jurisdictional limit. Accordingly, based on the potential awards for compensatory and

22   punitive damages, the amount in controversy as to the Plaintiff exceeds the jurisdictional limit.

23   Therefore, removal is proper.

24   //

25   //

26   //

27   //

28   //

)X ROTHSCHILD LLP
S PINE STREET
ITE 1500
N FRANCISCO, CA 94104
WC1 13881v1 09/20/07

1  **Fictitious Defendants**

2       17.    Medicis believes and on that basis alleges that none of the fictitiously-named

3  defendants have been identified by Plaintiff or served with the Summons and Complaint. (28

4  USC § 1441(a); Newcombe v. Adolf Coors Company, 157 F.3d 686, 690-691 (9th Cir. 1998).

5

6  Dated: September 20, 2007                    FOX ROTHSCHILD LLP

7

8

9                                    By:

10                                        DAVID F. FAUSTMAN
                                         Attorneys for Defendant
11                                       MEDICIS PHARMACEUTICAL
                                         CORPORATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

)X ROTHSCHILD LLP
5 PINE STREET
ITE 1500
N FRANCISCO, CA 94104        WCI 13881v1 09/20/07

**DECLARATION OF CRISTINA K. OLIVELLA**

I, CRISTINA K. OLIVELLA, declare:

1.    I am an attorney licensed to practice law in the State of California. I am an Associate with the law firm of Fox Rothschild LLP, attorneys of record for Defendant MEDICIS PHARMACEUTICAL CORPORATION herein.

2.    I have personal knowledge of the facts below, or have gained such knowledge through my review of the files in this case. If called to testify to the following, I could and would competently do so.

3.    Attached to the Notice of Removal as Exhibit 4 is a true and correct copy of the trial digest for Elliott v. City of Gardena, 2001 WL 1255712 (Cal.Superior).

4.    Attached to the Notice of Removal as Exhibit 5 is a true and correct copy of the trial digest for Quinn v. Barry & Company, 2001 WL 732077 (Cal.Superior).

5.    Attached to the Notice of Removal as Exhibit 6 is a true and correct copy of the trial digest for Carter v. CB Richard Ellis, 2001 WL 34109371 (Cal.Superior).

6.    Attached to the Notice of Removal as Exhibit 7 is a true and correct copy of the trial digest for Belander v. The Restaurant Enterprises Group, Inc., 1991 WL 632868 (Cal.Superior).

7.    Attached to the Notice of Removal as Exhibit 8 is a true and correct copy of the trial digest for DeVille v. City of Compton, 1996 WL 341815 (Cal.Superior).

8.    Attached to the Notice of Removal as Exhibit 9 is a true and correct copy of the trial digest for Shimazu v. Amalgamated Acme, 1997 WL 638867 (Cal.Superior).

9.    Attached to the Notice of Removal as Exhibit 10 is a true and correct copy of the trial digest for Harvey v. Sybase, Inc., 2004 WL 3828468 (Unknown State Ct.).

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed this 20th day of September 2007 at San Francisco, California.

CRISTINA K. OLIVELLA

7

)X ROTHSCHILD LLP
S PINE STREET
ITE 1500
N FRANCISCO, CA 94104

WC1 13881v1 09/20/07

1

## PROOF OF SERVICE

2

I am employed in the County of San Francisco, State of California. I am over the age of

3    18 years and not a party to this action; my business address is: 235 Pine Street, Suite 1500, San
Francisco, California 94104.

4

On September 20, 2007, I served the foregoing **DEFENDANT'S NOTICE OF**

5    **REMOVAL AND ATTACHED DECLARATION OF CRISTINA K. OLIVELLA** on the
interested party in this action by placing true copies thereof enclosed in sealed envelopes

6    addressed as follows:

7

8    G. Whitney Leigh, Esq.
GONZALEZ & LEIGH LLP

9    Two Shaw Alley, Third Floor
San Francisco, California 94105

10

11   Juan Enrique Pearce, Esq.
PEARCE LAW OFFICES

12   530 Jackson Street, Second Floor
San Francisco, California 94113

13

14   [ x ]     **BY FIRST CLASS MAIL:** I caused said documents to be deposited in a facility regularly

15           maintained by the United States Postal Service on the same day, in a sealed envelope, with
postage paid, addressed to the above listed persons on whom it is being served in San

16           Francisco, California for collection and mailing on that date following ordinary business
practices.

17

18

I declare under penalty of perjury under the laws of the State of California that the

19   foregoing is true and correct.

20

Executed this 20th day of September 2007 at San Francisco, California.

21

22                                              Amie Morelli

23

24

25

26

27

28

8

)X ROTHSCHILD LLP
5 PINE STREET
JITE 1500
.N FRANCISCO, CA 94104          WCI 13881v1 09/20/07

1   G. WHITNEY LEIGH (SBN 153457)      **IMAGED**
    GONZALEZ & LEIGH LLP
2   Two Shaw Alley, Third Floor        JUL 2 8 2007
    San Francisco, CA 94105
3   Telephone: (415) 512-2000
    Facsimile: (415) 512-2001

4   JUAN ENRIQUE PEARCE (SBN 236228)
    PEARCE LAW OFFICES                 CASE MANAGEMENT CONFERENCE SET
5   530 Jackson Street, Second Floor
    San Francisco, CA 94133
6   Telephone: (415) 434-9000
    Facsimile: (415) 434-9010          DEC 2 1 2007 -9ᴬᴹ AM

7

8   Attorneys for Plaintiff            DEPARTMENT 212
    KIMBERLEA MCMANIGAL

**FILED**
San Francisco County Superior Court
JUL 2 8 2007
GORDON PARK-LI, Clerk
BY: _____
DEBORAH STEPPE, Deputy Clerk

**SUMMONS ISSUED**

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                CITY AND COUNTY OF SAN FRANCISCO

11   KIMBERLEA MCMANIGAL, an individual,     CASE NO. CGC-07-465398
12   and ROES 1 through 50,
                                             COMPLAINT FOR:
13                      Plaintiff,
                                             1.  DISCRIMINATION BASED ON
14          v.                                   SEX IN VIOLATION OF
                                                 GOVERNMENT CODE SECTION
15   MEDICIS PHARMACEUTICAL                      12940(a);
     CORPORATION, a Delaware corporation,   2.  HARASSMENT BASED ON SEX IN
16   ROBERT NEVIN, an individual, and DOES 1     VIOLATION OF GOVERNMENT
     through 50,                                 CODE SECTION 12940(j);
17                                           3.  FAILURE BY EMPLOYER TO
                       Defendants.               TAKE CORRECTIVE ACTION
18                                               REGARDING HARASSMENT
                                                 BASED ON SEX IN VIOLATION
19                                               OF GOVERNMENT CODE
                                                 SECTION 12940(k);
20                                           4.  INTENTIONAL INFLICTION OF
                                                 EMOTIONAL DISTRESS
21
                                             **JURY TRIAL DEMANDED**
22

23          Plaintiff hereby alleges through her counsel the following:

24                           **INTRODUCTION**

25          1.      This case is borne from discriminatory and harassing conduct on the part of Medicis

26   Pharmaceutical Corporation ("Medicis") and Robert Nevin based upon Plaintiff's sex. After Plaintiff

27   announced her pregnancy to her employer, Medicis, and her immediate supervisor, Robert Nevin,

28   Defendants subjected Plaintiff to continual discriminatory and harassing behavior that includes threats

                                    1

1  on her job, threats on promotions, denial of bonus compensation, arbitrary reprimands and abject

2  failure to take corrective action regarding the discriminatory and harassing behavior.

3      2.      Plaintiff first sought assistance to curb this unlawful behavior from the Human

4  Resources Department at Medicis. But rather than support one of its employees who was being

5  attacked because of her sex, Medicis chose to laugh off Plaintiff's complaints of discrimination and

6  harassment—offering no assistance and not intervening to end the discrimination and harassment that

7  Plaintiff faced.

8      3.      Plaintiff has challenged Defendants' discriminatory and harassing conduct on

9  numerous occasions. Each time she has spoken out in an attempt to assert her civil rights, Plaintiff has

10 been faced retaliation and disparagement about her work ethic and professionalism. On more than one

11 occasion, Defendants have, in a concerted effort, sought to intimidate and prevent Plaintiff from

12 asserting her rights.

13                          **JURISDICTION AND VENUE**

14      4.      This Court has jurisdiction over causes of action asserted herein related to Government

15 Code Section 12940, which is a California state statute that expressly invokes the state's police power.

16 CAL. GOVT. CODE § 12920.

17      5.      This Court has jurisdiction over Plaintiff's claim for intentional infliction of emotional

18 distress. The facts supporting this cause of action arise out of conduct undertaken by Defendants in

19 San Francisco County, State of California.

20      6.      Each Defendant has sufficient minimum contacts with the State of California, is a

21 citizen of the State of California, or otherwise intentionally availed itself of the State of California so

22 as to render the exercise of jurisdiction over it by the State of California courts, consistent with

23 traditional notions of fair play and substantial justice.

24      7.      Plaintiff exhausted her administrative remedies by filing administrative complaints

25 against Defendants with the California Department of Fair Employment and Housing ("Department").

26 Plaintiff received right-to-sue letters from the Department for case numbers E200607A0984-00-prsc

27 and E200607A0984-01-prsc conferring upon her the right to file suit against Defendants. Plaintiff

28 subsequently served the right-to-sue letters on Defendants, as required by law.

-2-

COMPLAINT                                           *McManigal v. Medicis, et al.*
                                                    Case No. _____

1      8.     Venue is proper in this Court under because the injuries sustained by Plaintiff and the

2    causes of action belying this Complaint occurred in San Francisco County, State of California.

3                              **FACTUAL BACKGROUND**

4          **A.     Defendants' unlawful discrimination began during Plaintiff's interview.**

5          9.     Plaintiff Kimberlea McManigal is a Territory Manager for Medicis, a company that

6    sells dermatological pharmaceutical and aesthetic products largely marketed toward women.  The

7    duties of the Territory Manager include being assigned a geographic area, or territory, for which an

8    individual is charged with developing contacts with physicians and demonstrating Medicis products to

9    those physicians.

10         10.    Plaintiff first learned of the Territory Manager job opportunity at Medicis in or about

11   June 2005.

12         11.    Plaintiff interviewed for a position of Territory Manager at Medicis with Regional

13   Manager Nancy Fong, and later, Defendant Robert Nevin.  During an interview with Defendant

14   Nevin, Defendant Nevin expressly asked Plaintiff to disclose her marital status and whether or not she

15   had any children. Plaintiff took great offense to these questions, as they are in no way related to the

16   job duties of Territory Manager.  Plaintiff considered those questions to be discriminatory and

17   harassing in nature — designed to send a message that women with children were not welcomed at

18   Medicis.

19         12.    Despite her reservations regarding Defendant Nevin's questions and underlying

20   motives, Plaintiff accepted a Territory Manager position with Medicis on August 8, 2005.  It was

21   Plaintiff's fervent hope that the discriminatory and harassing comments were aberrations to the

22   conduct of Defendant Nevin and Medicis's corporate policy.

23
       **B.     Defendant Nevin frequently made derogatory remarks about women in Plaintiff's
24          presence.**

25         13.    Since the time in which she has worked at Medicis, Plaintiff has been made to suffer

26   through a continual harangue of derogatory comments that Defendant Nevin makes about women.

27   Defendant Nevin's commentary was specifically designed to intimidate Plaintiff and send a clear

28   message: that pregnant employees are not welcome at Medicis.  Defendant Nevin's communications

                                          - 3 -

1  about women and pregnancy leave little doubt but that women held a lower, less valuable place at

2  Medicis than their male counterparts.

3      14.    For example, in October of 2005, Mr. Nevin implied that women should work through

4  their pregnancy and not take maternity leave, stating with fondness that there was a time when women

5  would work in the potato field, go inside to have a baby, and go back to the potato field the same day.

6      15.    In March of 2006, Defendant taunted Plaintiff based on her sex yet again. Specifically,

7  when Plaintiff expressed interest in a client development trip to the NCAA Men's Basketball

8  Tournament, Defendant Nevin replied to her that she would never be invited on such a trip because it

9  was a "boy's trip".

10      16.    Sometime in the fall of 2006, Defendant Nevin stated that he could hire "a college

11  chick with blonde hair and big tits" who would sell more than one of Plaintiff's male colleagues.

12      17.    On several occasions Defendant Nevin lamented to Plaintiff that he cannot interact with

13  her like he does with male employees. In addition, he has commented to other male employees that he

14  doesn't like dealing with women because women cry.

15      18.    In yet another instance that did not involve Defendant Nevin, Plaintiff reviewed an

16  evaluation form for a candidate applying for a position at Medicis on which the Medicis interviewer

17  had written positive comments associated with that applicant's not having any children. These

18  comments stated that because the candidate did not have children, she could devote most of her time

19  to work. This evaluation was eventually sent to the Medicis corporate office.

20      **C.    Despite the continual discrimination and harassment at work, Plaintiff performs
          her work duties in a satisfactory manner.**

21

22      19.    In the years 2005 and 2006, Plaintiff worked hard to build up her clientele for the

23  Medicis products she was charged with promoting. Plaintiff regularly received praise from her

      physician/clients.

24

25      20.    Plaintiff was increasingly successful in discharging her employment duties, as

26  measured by Medicis's own rankings system. As of the fourth quarter of 2006, Plaintiff enjoyed a

      ranking of 32 out of 51. In addition, Plaintiff ranked #1 in sales growth for the product "Plexion" and

27  #5 for the product "Triaz".

28

-4-

COMPLAINT                                                    *McManigal v. Medicis, et al.*
                                                             Case No. _____

21.   During 2005, Plaintiff earned a base salary of $68,000; in 2006, Plaintiff earned a base salary of $69,360.

22.   From the time she was hired through the fall of 2007, Plaintiff never received any negative written or verbal performance evaluations.  In 2006, she received a merit increase in her base salary and a stock grant for good performance.  Additionally, Plaintiff received another merit-based increase to her base salary in March 2007.

**D.   Defendants' discriminatory and harassing behavior increased when Plaintiff informed them of her pregnancy.**

23.   In early November 2006, Plaintiff informed her supervisor, Robert Nevin, that she was pregnant.  Defendant Nevin's reaction was swift and severe.  He immediately charted out a plan to systematically discredit Plaintiff's work record simply because she dared to get pregnant.

24.   Defendant Nevin's plan manifested itself in a series of pretextual reprimands for Plaintiff's supposed failure to follow company policy.

25.   Approximately two weeks after Plaintiff announced her pregnancy, Defendant Nevin telephoned Plaintiff to reprimand her for supposed poor performance.  During the conversation, Defendant Nevin stated that his superiors wanted her to be fired or, at very least, to be put on a performance plan.  Defendant Nevin claimed that, "[i]f it was not for me, you would be out of a job right now [*sic*]."

26.   During this call Defendant Nevin also stated, "[y]ou have two choices: bring up the numbers or you know the other choice."  By this statement, Plaintiff believed Defendant Nevin was threatening her job.

27.   Defendant Nevin went on to state that he understood that Plaintiff was pregnant.  "This should be a happy time for you, not a miserable time," he stated.  "But you have to understand the way this company works."  He later suggested to Plaintiff that she should consider whether or not Medicis was an appropriate place for her to work.

28.   In December 2006, Plaintiff did not receive any discretionary bonus, although she was performing as well or better than others who had received such bonuses.  In particular, Plaintiff was ranked number one in Q3 for the Northwest Region for Solodyn, a difficult-to-sell new product.

- 5 -

*McManigal v. Medicis, et al.*
                                                                                                                       Case No. _____

29.    On January 15, 2007, while attending an out-of-town meeting, Plaintiff was denied her own room that, which, according to company policy, was to be provided to pregnant women. When Plaintiff informed Defendant Nevin of this fact, he simply laughed it off, and did nothing correct the situation.

30.    On January 19, 2007, after a physician complained to Plaintiff's superiors about a paperwork error that delayed the physician's payment, Defendant Nevin contacted Plaintiff and again threatened her job. Defendant Nevin implied that because she was pregnant she was not focused on her work responsibilities and stated that she, "would be lucky to get out of this with a job." Defendant Nevin further attempted to intimidate Plaintiff by falsely stating that the Medicis human resources department convened a meeting to discuss this incident.

31.    On January 29, 2007, Defendant Nevin, who had never previously notified Plaintiff regarding her failure to perform a simple, administrative task(s), tendered a formal disciplinary letter to Plaintiff outlining "an unacceptable pattern of behavior regarding administrative duties." Defendant Nevin chose to single Plaintiff out for failing to follow administrative procedure(s). Plaintiff believes that she was specially targeted, because other Territory Managers under Defendant Nevin's supervision, routinely ignore the administrative procedure(s) in question, without formal reprimands being issued.

32.    During a conversation related to the disciplinary letter, Defendant Nevin once again threatened to fire Plaintiff by yelling at Plaintiff, "Corporate wanted your job last Monday. You're lucky to be here this week. You have to sign the letter or you know your other option."

33.    Plaintiff believes this was a further attempt by Defendants to coerce a resignation from her. Plaintiff believes that Defendants wanted her to resign because she was pregnant and, in the eyes of the Defendants, was no longer as useful to the company.

34.    In a subsequent conversation regarding the disciplinary letter, Defendant Nevin became enraged when Plaintiff refused to sign the letter. Defendant Nevin specifically stated that he would go back and find out everything Plaintiff had ever done wrong while employed at Medicis.

35.    On January 30, 2007, Plaintiff complained to Amy Gajante at Human Resources about Defendant Nevin's discriminatory and harassing behavior. Plaintiff was explicit in her description of

- 6 -

*McManigal v. Medicis, et al.*
Case No. _____

1  the discrimination and harassment to which she had been subjected. Plaintiff stated directly that

2  Defendant Nevin, "was harassing me and threatening my job because I'm pregnant."

3       36.   Incredibly, Ms. Gajante's response as a Human Resources representative stated that

4  there was nothing that could be done about the situation. Ms. Gajante's only suggestion to Plaintiff

5  was that she talk to Defendant Nevin directly about her complaints of discrimination and harassment.

6       37.   Defendant Medicis did not, in any manner, attempt to intervene or assist Plaintiff in

7  addressing the discriminatory and harassing abuse she had suffered.

8       38.   Thereafter, Defendant Nevin continued his pattern of discrimination and harassment

9  toward Plaintiff. Defendant Nevin threatened Plaintiff's job and determined to affect Plaintiff's work

10 reputation.

11                          **CAUSES OF ACTION**

12                     **FIRST CAUSE OF ACTION**
                         (Sex Discrimination)
13                       (Against Medicis)

14      39.   Plaintiff reincorporates the allegations set forth in each and every preceding paragraph.

15      40.   Defendant Medicis discriminated against Plaintiff in compensation and/or in terms,

16 conditions, or privileges of employment based on her sex and pregnancy, by denying her bonus

17 compensation, promotions and benefits given to other employees, and in holding her to different

18 performance standards than other employees, and repeated threats on her job, in violation of

19 Government Code § 12940(a).

20

21                    **SECOND CAUSE OF ACTION**
                       (Harassment based on Sex)
22                     (Against both Defendants)

23      41.   Plaintiff incorporates the allegations set forth in each and every preceding paragraph.

24      42.   Defendants harassed Plaintiff based on her sex and pregnancy by creating a hostile

25 work environment. Defendants' unlawful harassment includes threats to her job, yelling and swearing

26 at her, holding her to different performance standard than other employees, subjecting her to arbitrary

27 disciplinary action, and denying her benefits given to other employees in violation of Government

28 Code § 12940(j).

                                -7-

COMPLAINT                                    McManigal v. Medicis, et al.
                                             Case No. _____

## THIRD CAUSE OF ACTION

### (Failure to take Corrective Action)
### (Against Medicis)

43. Plaintiff incorporates the allegations set forth in each and every preceding paragraph.

44. Defendants failed to take all reasonable steps necessary to prevent discrimination and harassment from occurring. Even after Plaintiff reported the incidents of discrimination and harassment, Defendants took no corrective action whatsoever, in violation of Government Code § 12940(k).

## FOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)
### (Against both Defendants)

45. Plaintiff incorporates the allegations set forth in each and every preceding paragraph.

46. Defendants by and through their intentional and/or recklessly negligent and outrageous actions, caused Plaintiff severe emotional distress.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

1. For compensatory, general, and special damages against the Defendants as the law provides;

2. For exemplary and punitive damages against Defendants in an amount sufficient to deter and to make an example of those Defendants as the law provide;

3. For attorneys' fees and costs; and

4. For such other relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for the claims raised herein.

DATED: July 23, 2007                        Respectfully Submitted,

                                            GILBERT

                                            By _____

                                            G. WHITNEY LEIGH
                                            Attorneys for Plaintiff
                                            KIMBERLEA MCMANIGAL

- 8 -

RECYCLED

09/19/2007  11:49    602-667▬021          MEDICIS              PAGE  05/05

**SUMMONS**

*(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MEDICIS PHARMACEUTICAL CORPORATION, a Delaware
corporation, ROBERT NEVIN, an individual, and DOES 1
through 50

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
KIMBERLEA MCMANIGAL, an individual and ROES 1 through
50

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.  If you cannot pay the filing fee, ask the court clerk for a fee waiver form.  If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA<br>CITY AND COUNTY OF SAN FRANCISCO<br>400 McAllister Street<br>San Francisco, CA  94102 | CASE NUMBER:<br>*(Número del Caso):*<br>**CGC-07-465398** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
G. WHITNEY LEIGH (SBN 153457)                      (415) 512-2000
GONZALEZ & LEIGH, LLP
Two Shaw Alley, Third Floor Jordon Park-Li         Deborah Steppe
San Francisco, CA  94105

| DATE:<br>*(Fecha)*  **JUL 2 3 2007** | Clerk, by _____, Deputy<br>*(Secretario)*                              *(Adjunto)* |
|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Medicis Pharmaceutical Corporation, a Delaware corporation

   under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☑ by personal delivery on *(date):* 8-21-7  2:55 p         Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

1  DAVID F. FAUSTMAN, State Bar No. 081862
2  FOX ROTHSCHILD LLP
   235 Pine Street, Suite 1500
3  San Francisco, CA 94104
   Telephone: (415) 364-5540
4  Facsimile: (415) 391-4436

5  Attorneys for Defendant
6  MEDICIS PHARMACEUTICAL CORPORATION

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  CITY AND COUNTY OF SAN FRANCISCO

10

11 | KIMBERLEA MCMANIGAL, an individual, and | Case No. CGC-07-465398
   | ROES 1 through 50,
12 |                                          | **DEFENDANT MEDICIS**
   |                                          | **PHARMACEUTICAL**
13 |              Plaintiffs,                 | **CORPORATION'S ANSWER TO**
14 |                                          | **COMPLAINT**
   |              vs.
15 |
   | MEDICIS PHARMACEUTICAL
16 | CORPORATION, a Delaware corporation,     | Complaint filed: July 23, 2007
17 | ROBERT NEVIN, an individual, and DOES 1
   | through 50,
18 |
   |              Defendants.
19

20

21

22

23

24

25

26

27

28

ANSWER

1    Defendant MEDICIS PHARMACEUTICAL CORPORATION ("Defendant") responds

2 as follows to Plaintiff KIMBERLEA MCMANIGAL's ("Plaintiff") unverified Complaint in this

3 case. Pursuant to Code of Civil Procedure section 431.30, subdivision (d), Defendant generally

4 denies each and every allegation contained in the unverified Complaint, denies that Plaintiff has

5 suffered any injury, damage or loss by reason of any act or omission on its part, denies that

6 Plaintiff has been damaged in any amount whatsoever, and denies that it owes Plaintiff any

7 amount whatsoever. For its affirmative defenses, Defendant alleges as follows:

8                          **FIRST AFFIRMATIVE DEFENSE**

9    1.    The Complaint fails to state a claim upon which relief can be granted.

10                        **SECOND AFFIRMATIVE DEFENSE**

11    2.    Plaintiff's Complaint is barred, in whole or in part, because any claims and

12 disputes arising out of Plaintiff's employment with Defendants are subject to a binding

13 arbitration agreement.

14                          **THIRD AFFIRMATIVE DEFENSE**

15    3.    The Complaint fails to state a claim upon which an award of attorneys' fees can be

16 granted.

17                        **FOURTH AFFIRMATIVE DEFENSE**

18    4.    Plaintiff's claims, or the damages she may recover, are barred or at least reduced

19 by her failure to mitigate damages.

20                          **FIFTH AFFIRMATIVE DEFENSE**

21    5.    To the extent that it seeks punitive or exemplary damages, the Complaint violates

22 Defendant's rights to procedural and substantive due process under the Fourteenth Amendment

23 to the United States Constitution and under the Constitution of the State of California.

24                          **SIXTH AFFIRMATIVE DEFENSE**

25    6.    Defendant is not liable for any acts or omissions of any person who was not

26 acting within the course and scope of his/her duties as an employee, agent, director, officer, or

27 constituent member of Defendant.

28

1

ANSWER

1

**SEVENTH AFFIRMATIVE DEFENSE**

2        7.        Plaintiff's claims are barred by the statute of limitations set forth in Code of Civil

3    Procedure sections 335.1, 338, 340, 343; the statute of limitations contained in Government

4    Code section 12960; and any other applicable statutes of limitation.

5

**EIGHTH AFFIRMATIVE DEFENSE**

6        8.        Plaintiff's claims against Defendant brought under the Fair Employment and

7    Housing Act ("FEHA") are barred to the extent that Plaintiff failed to timely exhaust his internal

8    and/or administrative remedies and prerequisites to filing suit.

9

**NINTH AFFIRMATIVE DEFENSE**

10        9.        Plaintiff unreasonably delayed in their investigation and prosecution of the claims

11    alleged in the Complaint. Such delay is to the detriment and prejudice of Defendant. Therefore,

12    Plaintiff is barred from recovery against the Defendant by virtue of the doctrine of laches.

13

**TENTH AFFIRMATIVE DEFENSE**

14        10.        Plaintiff's Complaint is barred by the doctrine of unclean hands.

15

**ELEVENTH AFFIRMATIVE DEFENSE**

16        11.        Plaintiff's claims are barred, in whole or in part, or the relief under such claims is

17    limited, by the doctrine of after-acquired evidence.

18

**TWELFTH AFFIRMATIVE DEFENSE**

19        12.        Plaintiff's Complaint is barred because the applicable administrative procedures

20    and conditions precedent were not properly effectuated or complied with prior to the

21    commencement of this action.

22

**THIRTEENTH AFFIRMATIVE DEFENSE**

23        13.        Plaintiff's Complaint is barred because any adverse employment actions that

24    Plaintiff allegedly suffered, including but not limited to termination, were supported by

25    legitimate non-discriminatory business reasons.

26    //

27    //

28    //

2

ANSWER

1

## FOURTEENTH AFFIRMATIVE DEFENSE

2      14.    Plaintiff's harassment claims are barred because Defendant exercised reasonable

3   care to prevent and promptly correct any harassing behavior and Plaintiff unreasonably failed to

4   take advantage of any preventive or corrective opportunities provided by Defendant or to

5   otherwise avoid harm.

6

## FIFTEENTH AFFIRMATIVE DEFENSE

7      15.    Any recovery on Plaintiff's Complaint, or any purported cause of action contained

8   therein, is barred because Plaintiff consented to the alleged conduct.

9

## SIXTEENTH AFFIRMATIVE DEFENSE

10      16.    Any harm or injury suffered by Plaintiff, the existence of such harm or injury

11   being specifically denied, is the result of Plaintiff's own actions and/or inactions.

12

## SEVENTEENTH AFFIRMATIVE DEFENSE

13      17.    Any harm or injury suffered by Plaintiff, the existence of such harm or injury

14   being specifically denied, is the result of the actions of others not within the control of

15   Defendant.

16

## EIGHTEENTH AFFIRMATIVE DEFENSE

17      18.    Plaintiff is barred from seeking any damages from purported physical or

18   emotional injuries allegedly suffered as a result of her employment in that the sole and exclusive

19   remedy in this respect is governed by the California Workers' Compensation Act as set forth in

20   Labor Code Sections 3600 and 3602(a).

21

## NINETEENTH AFFIRMATIVE DEFENSE

22      19.    Some or all of the claims for damages alleged in the Complaint are barred in that

23   all decisions and actions of Defendant with respect to the subject matter of this lawsuit were

24   undertaken in good faith, in the absence of malicious intent, and constituted a lawful, proper and

25   justified means to further their legitimate economic interests.

26

## TWENTIETH AFFIRMATIVE DEFENSE

27      20.    To the extent Plaintiff's allegations exceed the scope of the Complaint of

28   Discrimination they filed with the Department    of Fair Employment and Housing (the

3

ANSWER

1  "DFEH"), their claims brought under FEHA are barred in whole or in part.

2  **TWENTY-FIRST AFFIRMATIVE DEFENSE**

3  21.    Any claims predicated on the actions of Defendants' officers, directors,

4  employees, agents, and constituent members are barred by the doctrine of managerial immunity.

5  **TWENTY-SECOND AFFIRMATIVE DEFENSE**

6  22.    Plaintiff's Complaint is barred, in whole or in part, because Defendant's acts

7  and/or omissions were justified and/or privileged.

8  **TWENTY-THIRD AFFIRMATIVE DEFENSE**

9  23.    None of the acts alleged against the defendants were extreme or outrageous.

10  Plaintiff's claim for intentional infliction of emotional distress against the defendants fails

11  accordingly.

12

13  Defendant currently has insufficient information upon which to form a belief as to

14  whether it may have additional, yet unstated, affirmative defenses available.  Defendant reserves

15  the right to assert additional affirmative defenses in the event discovery indicates they would be

16  appropriate.

17  WHEREFORE, Defendant prays for judgment in its favor as follows:

18  1.    That Plaintiff takes nothing by her Complaint;

19  2.    That the Complaint be dismissed with prejudice;

20  3.    For its costs of suit, including reasonable attorneys' fees as allowed by law; and

21  4.    For such other and further relief as the Court finds just and proper.

22  Dated: September 20, 2007                    FOX ROTHSCHILD LLP

23

24

25  BY: _____

DAVID F. FAUSTMAN

26  Attorneys for Defendant

MEDICIS PHARMACEUTICAL

27  CORPORATION

28

4

ANSWER

**PROOF OF SERVICE**

I am employed in the County of San Francisco, State of California.  I am over the age of 18 years and not a party to this action; my business address is:  235 Pine Street, Suite 1500, San Francisco, CA 94104.

On September 20, 2007, I served the foregoing **DEFENDANT MEDICIS PHARMACEUTICAL CORPORATION'S ANSWER TO COMPLAINT** on the interested party in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

G. Whitney Leigh, Esq.
GONZALEZ & LEIGH LLP
Two Shaw Alley, Third Floor
San Francisco, California 94105

Juan Enrique Pearce, Esq.
PEARCE LAW OFFICES
530 Jackson Street, Second Floor
San Francisco, California 94113

[X]    **BY FIRST CLASS MAIL:** I caused said document to be deposited in a facility regularly maintained by the United States Postal Service on the same day, in a sealed envelope, with postage paid, addressed to the above listed persons on whom it is being served in San Francisco, California for collection and mailing on that date following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 20th day of September 2007 at San Francisco, California.

Ami Morelli

Amie Morelli

1
PROOF OF SERVICE

WC1 13899v1 09/20/07

RECYCLED

Westlaw.

41 Trials Digest 4th 5                                                                          Page 1

2001 WL 1255712 (Cal.Superior), 41 Trials Digest 4th 5

**(Publication page references are not available for this document.)**

For opinion see 2001 WL 36021498(Trial Order), 2001 WL 36021497(Trial Order), 2001
WL 36021496(Trial Order), 2001 WL 36021495(Trial Order), 2001 WL 36021499(Trial
Order)

Copyright (c) 2007 Thomson/West

Superior Court, Los Angeles County, California.
Elliott vs. City of Gardena

TOPIC:
  Synopsis: Woman police officer claims employment discrimination, retaliation
  Case Type: Employment; Discrimination; Employment; Retaliation

DOCKET NUMBER: YC038256

STATE: California

COUNTY:  Los Angeles

Verdict/Judgment Date: July 23, 2001
JUDGE: Jean E. Matusinka

ATTORNEYS:
  Plaintiff: Michael Grobaty Jr., Johnson & Grobaty, Newport Beach.
  Defendant: Linda L. Daube, Law Offices of Linda L. Daube, Sonoma.

SUMMARY:

  Verdict/Judgment: Plaintiff
  Verdict/Judgment Amount: $1,650,000

Range: $1,000,000-$1,999,999

  Awarded for emotional distress.
  Trial Type: Jury
  Trial Length: 8 days.
  Deliberations: 2 days.
  Jury Poll: 11-1 on gender discrimination; 12-0 on retaliation.

EXPERTS:

  Plaintiff: Dennis Greenberger, psychologist, Santa Ana, (714) 972-9706.

TEXT:

CASE INFORMATION

FACTS/CONTENTIONS

According to Plaintiff: Plaintiff claimed that due to defendant's discriminatory
practices, she suffered extreme emotional distress from her inability to work in

2001 WL 1255712 (Cal.Superior), 41 Trials Digest 4th 5

**(Publication page references are not available for this document.)**

law enforcement. The plaintiff was Diane Elliott, a 39- year-old sergeant with the
City of Gardena Police Department. The defendant was the City of Gardena. Plaintiff
became a police officer with defendant City in 1986. She was promoted to sergeant
in 1992. Despite having better qualifications than all her male counterparts
seeking promotion to lieutenant, she was not promoted to lieutenant in either 1999
or 2000. In many instances, defendant promoted men over plaintiff in violation of
the city's own personnel rules. When plaintiff complained about the discriminatory
practices, she suffered multiple adverse employment actions, which ultimately
forced her to leave law enforcement.

CLAIMED INJURIES
According to Plaintiff: Extreme emotional distress.
CLAIMED DAMAGES
According to Plaintiff: Plaintiff did not request a specific amount but asked the
jury to award a reasonable amount for the lifelong emotional problems she will
experience.

SETTLEMENT DISCUSSIONS
According to Plaintiff: Demand: $85,000 before trial; $200,000 (CCP 998) propounded
after first demand was rejected. Offer: $25,000.
EXPERT TESTIMONY
According to Plaintiff: Plaintiff's expert testified about the emotional
devastation suffered by plaintiff as a result of defendant's discrimination and
retaliation.
COMMENTS
According to Plaintiff: Plaintiff has filed a motion for attorney fees as the
prevailing party in an action under California's FEHA statutes.

Trials Digest, A Thomson/West business

Los Angeles County Superior Court/Torrance

 2001 WL 1255712 (Cal.Superior), 41 Trials Digest 4th 5

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.




Westlaw.

23 Trials Digest 4th 4                                                                  Page 1

2001 WL 732077 (Cal.Superior), 23 Trials Digest 4th 4

**(Publication page references are not available for this document.)**

For opinion see 2001 WL 35905434(Trial Order), 2001 WL 36010413(Trial Order)

Copyright (c) 2007 Thomson/West

Superior Court, Los Angeles County, California.
Quinn vs. Barry & Company

TOPIC:
  Synopsis: Employee exposed to pornography sues former employer for sexual
harassment/wrongful termination
  Case Type: Employment; Sexual Harassment; Employment; Discrimination; Employment;
Termination; Violation of Public Policy; Intentional Torts; Infliction of Emotional
Distress

DOCKET NUMBER: GC024993

STATE: California

COUNTY:  Los Angeles

Verdict/Judgment Date: March 23, 2001
JUDGE: Lillian M. Stevens

ATTORNEYS:
  Plaintiff: Gregory B. Scher, Woolls & Peer, Los Angeles.
  Defendant: Lloyd C. Ownbey, Law Office of Lloyd C. Ownbey, Pasadena.

SUMMARY:

  Verdict/Judgment: Plaintiff
  Verdict/Judgment Amount: $230,000

Range: $200,000-$499,999

  $110,000 compensatory damages; $120,000 punitive damages. Because plaintiff
prevailed on the statutory claims, she will be entitled to recover her attorney
fees. Since the verdict exceeded plaintiff's statutory offer to compromise, she
will also be entitled to expert witness fees.
  Trial Type: Jury
  Trial Length: 5 days.
  Deliberations: 4 days.
  Jury Poll: Mixed poll.

EXPERTS:

  Plaintiff: Nancy Rhodes, psychologist, Pasadena, (626) 304-9353.
  Defendant: Not reported.

TEXT:

2001 WL 732077 (Cal.Superior), 23 Trials Digest 4th 4

**(Publication page references are not available for this document.)**


CASE INFORMATION

FACTS/CONTENTIONS

According to Plaintiff: An employee who was exposed to pornography on the job sued her former employer for sexual harassment and wrongful termination. The plaintiff was Carrie Quinn, a 35-year-old administrative assistant. The defendants were Barry & Company and its owner, William P. Barry. Plaintiff was an administrative/clerical employee of defendant, a facilities engineering firm in Pasadena. She worked directly for the owner of the company, Mr. Barry. Barry kept general business files and materials in his personal office in his credenza. As part of her job duties, plaintiff was required to access those files and materials. In 1995, about a year after plaintiff started working at the company, Barry brought a few pictures of topless women into the office and placed them in his credenza drawer. Plaintiff saw them and did nothing. In 1997, Barry began bringing more pictures and whole magazines into the office and placing them in his credenza, where plaintiff could and occasionally did see them. Later, Barry began cutting pictures out of magazines and making collages of them. He would put the collages in clear plastic sheet protectors and place them in a 3-ring binder, which he also kept in the credenza. Toward the end of 1999, the nature of the pictures changed. They began to depict actual or simulated sex acts, vaginal and anal penetration, urination and actual or simulated acts of violence against women. Just before Christmas in 1999, plaintiff told the president of the company what had been going on and showed him the binder. The president told her he couldn't help her and offered her a letter of recommendation. Plaintiff resigned her position and filed suit. She brought claims for violation of the sexual harassment and discrimination provisions of the Fair Employment and Housing Act, wrongful termination in violation of public policy and intentional infliction of emotional distress.

CLAIMED INJURIES
According to Plaintiff: Emotional distress.
CLAIMED DAMAGES
According to Plaintiff: $25,000 special damages including $22,000 lost earnings and $3,200 psychologist bills; punitive damages.

SETTLEMENT DISCUSSIONS
According to Plaintiff: Demand: $150,000 (CCP 998) two months before trial. Offer: No response until three days before trial when defendants offered $3,200, the amount of plaintiff's psychologist's bills.
EXPERT TESTIMONY
According to Plaintiff: Plaintiff's expert Rhodes was the treating psychologist who explained plaintiff's response to defendant's conduct.
COMMENTS
According to Plaintiff: The jury voted 12 to 0 on the statutory claims and wrongful termination; 9 to 3 against liability for intentional infliction of emotional distress; and 9 to 3 for punitive damages. An appeal was filed and a motion for attorney fees was pending at the time of this report.

Trials Digest, A Thomson/West business

Los Angeles County Superior Court/Pasadena

 2001 WL 732077 (Cal.Superior), 23 Trials Digest 4th 4

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

23 Trials Digest 4th 4

2001 WL 732077 (Cal.Superior), 23 Trials Digest 4th 4

**(Publication page references are not available for this document.)**

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

19 Trials Digest 6th 2                                                                                    Page 1

2001 WL 34109371 (Cal.Superior), 19 Trials Digest 6th 2

**(Cite as: 2001 WL 34109371 (Cal.Superior))**

For opinion see 2002 WL 34075888(Trial Order)

Copyright (c) 2007 Thomson/West

Superior Court, Orange County, California.
Carter vs. CB Richard Ellis

TOPIC:
  Synopsis: Employee sues for age and gender discrimination
  Case Type: Employment; Discrimination; Contracts; Breach

DOCKET NUMBER: 816619

STATE: California

COUNTY: Orange

Verdict/Judgment Date: October 7, 2001
JUDGE: Derek W. Hunt

ATTORNEYS:
  Plaintiff: John A. Girardi, Girardi & Keese, Los Angeles.; Lawrence J. Lennemann,
Law Office of Lawrence J. Lennemann, Torrance.; Shahram Shayesteh, Girardi & Keese,
Los Angeles.
  Defendant: Scott Bertzyk, Jones, Day, Keavis & Pogue, Irvine.; Thomas R. Malcolm,
Jones, Day, Keavis & Pogue, Irvine.; James Poth, Jones, Day, Keavis & Pogue,
Irvine.; Wallace Rosvall, Law Office of Wallace Rosvall, Los Angeles.

SUMMARY:

  Verdict/Judgment: Plaintiff
  Verdict/Judgment Amount: $1,020,861

Range: $1,000,000-$1,999,999

  The jury found that defendant discriminated against plaintiff on the basis of her
age and gender, and, in that regard, acted with malice and oppression. The jury
also found that defendant breached an implied employment agreement not to demote
plaintiff and awarded compensatory damages of $420,861, which represented the
difference claimed by the economist, plus a percentage for employee benefits. At
the second phase of trial, the jury returned a verdict for an additional $600,000
in punitive damages.
  Trial Type: Jury
  Trial Length: 11 days.
  Deliberations: 2 days.
  Jury Poll: Mixed poll.

EXPERTS:

  Plaintiff: Stuart Neffler, economist, La Jolla, (858) 459-8354.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2001 WL 34109371 (Cal.Superior), 19 Trials Digest 6th 2

**(Cite as: 2001 WL 34109371 (Cal.Superior))**

TEXT:

CASE INFORMATION

FACTS/CONTENTIONS

According to Plaintiff: A longtime employee accused her employer of age and gender discrimination and breach of an implied contract not to demote. The plaintiff was Helen Carter, a 51-year-old homemaker. The defendant was CB Richard Ellis ('CBRE'). Plaintiff had a 30-year tenure with defendant. At the time of her hiring as an office assistant, she was promised that if she performed her work well, she would receive increased responsibilities and increased compensation on a yearly review basis. This pattern continued over the course of 30 years (with the exception of one year in which there was a failure to perform an administrative task, and commensurate with the agreement, there was no increase in compensation). Plaintiff rose to the level of office administrator for the Orange County branch, a very successful branch of CBRE. In 1992, the office administrators for all of defendant's offices across the country (approximately 60) became participants in a bonus pool. The participation in the bonus pool depended upon the success of the individual branch. Plaintiff continued to share in this until 1998. At that time, a new president, Brett White, was appointed to run CBRE. He told senior members of management that participation by the office administrators in the profit bonus pool was an anomaly and was to be stopped and replaced by an alternative bonus situation. Fifty-nine of the sixty office administrators across the country were female, mostly over the age of 40. The money that was no longer shared with the office administrators of the profit bonus pool was not returned to the company, but rather to others, mostly senior sales personnel, who were the ones who primarily shared in the bonus pool. Plaintiff's base salary was $55,000 a year. Over the last several years of the nineties, during which time the Orange County office did very well, plaintiff's bonus pool participation rose from approximately $2,500 to a little over $38,000. Defendant offered the administrative managers a one-time stay on bonus of $15,000, contingent upon the signing of a release. Plaintiff was the only administrative manager who declined to do so. After continuing to work there for several months without sharing in the bonus pool, plaintiff voluntarily left the business.

Defendant contended that plaintiff was an at-will employee. It noted that the employee handbook issued in 1994, which plaintiff acknowledged receiving, indicated that her status was at-will. Further, this was the commonly understood relationship of any employee with defendant at seminars and employee training. Defendant contended that there was no agreement to continue to provide raises and increased responsibility from year to year. Defendant also contended that most of the managers for offices across the country worked for offices whose profits were not large enough for them to share any bonus pool, and that the change in the compensation was part of an overall company-wide reorganization of the duties of administrative manager. All of the other managers had accepted the stay-on bonus. It was also claimed that plaintiff intended to retire at the age of 55.

CLAIMED INJURIES
N/A
CLAIMED DAMAGES
According to Plaintiff: $363,000, plus a percentage of benefits, which represented her compensation under the former system in which she participated in the profit bonus pool and the new system of a base salary, plus a fixed competence performance

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2001 WL 34109371 (Cal.Superior), 19 Trials Digest 6th 2

**(Cite as: 2001 WL 34109371 (Cal.Superior))**


based compensation.

SETTLEMENT DISCUSSIONS
According to Plaintiff: Demand: $500,000, reduced to $250,000 at the time of
mediation before Justice Edward Panelli. Offer: $55,000, reduced to $25,000 during
trial.
COMMENTS
According to Plaintiff: Following the verdict, plaintiff submitted an application
for attorney fees in excess of $700,000. On various issues, the jury voted 9 to 3,
10 to 2, and 11 to 1. The trial court denied defendant's motions for JNOV and new
trial on the issues of gender and age discrimination, but granted the motion for
new trial on the basis of a breach of implied contract (citing the court's own
error on the verdict form), unless plaintiff accepted a total of $400,000.
Defendant filed a notice of appeal; plaintiff filed a notice of cross-appeal. John
A. Girardi provided the information for this report.

Trials Digest, A Thomson/West business

Orange County Superior Court

 2001 WL 34109371 (Cal.Superior), 19 Trials Digest 6th 2

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

7 Trials Digest 16

1991 WL 632868 (Cal.Superior), 7 Trials Digest 16

**(Publication page references are not available for this document.)**

Page 1

Copyright (c) 2007 Thomson/West

Superior Court, Los Angeles County, California.
Belanger v. The Restaurant Enterprises Group Inc.

TOPIC:
  Case Type: Employment
  Termination; Discriminatory

DOCKET NUMBER: C690093

STATE: California

COUNTY:  Los Angeles

Verdict/Judgment Date: December 13, 1991
JUDGE: Charles E. Jones

ATTORNEY:
  Charles T.              Mathews

SUMMARY:

  Verdict/Judgment: Plaintiff
  Verdict/Judgment Amount: $597,000

Range: $500,000-$999,999

  Trial Type: Jury Trial
  Trial Length: 10 days
  Deliberations: 4 days
  Jury Poll: 12-0 age discriminat

EXPERTS:

  John Ravin

  John Ravin

TEXT:

FACTS/CONTENTIONS

According To Plaintiff Plaintiff was a waitress at defendants' restaurant. After
she filed an age discrimination claim, defendants retaliated. They substantially
reduced her work hours, cut off her health insurance and conducted a campaign of
harassment to force her to quit. Finally, they laid her off. Plaintiff sued for
wrongful termination and age discrimination.
RELIEF/DAMAGES
According To Plaintiff
Losses Claimed --------------- $200,000 past income; emotional distress; lost

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1991 WL 632868 (Cal.Superior), 7 Trials Digest 16

**(Publication page references are not available for this document.)**


employment benefits.
VERDICT/JUDGMENT DETAILS
Verdict/Judgment Date: 12/13/91 Jury Poll: 12-0 age discriminat Deliberations: 4
days
Verdict/Judgment ----------------- Plaintiff. $305,500 compensatory damages plus
attorney fees against all defendants, $250,000 punitive damages against The
Restaurant Enterprises Group Inc., $40,000 punitive damages against Robert
Kissinger, $1,500 punitive damages against Marilyn Marks.

SETTLEMENT DISCUSSIONS
According To Plaintiff Demand: $200,000. Offer: $0.
EXPERTS
Side                   Expert Name         Expertise Type -----
------------           --------------- Plaintiff           John Ravin
Forensics Plaintiff         John Ravin         Mental Health
EXPERT DETAILS
Name: John            Ravin Occupation: child psychiatrist Phone: (310) 539- 0911
City: Torrance State: CA
Expertise Type                                    Expertise Sub Type ----------
----            ------------------ Forensics  Miscellaneous Mental Health  Child
Psychiatrist Mental Health  Psychiatrist
PARTY DETAILS
Side: Plaintiff Name: Lisa M. Belanger Occupation: waitress Age at incident: 51
Sex: Female
Side: Defendant Name: Robert          Kissinger Occupation: general manager of
The Restaurant Enterprises Group Inc. Sex: Male
Side: Defendant Name: Marilyn          Marks Occupation: manager of The
Restaurant Enterprises Group    Inc. Sex: Female
PARTY DETAILS FOR ORGANIZATION
Side: Defendant Name: The Restaurant Enterprises Group Inc.
COUNSEL DETAILS
Name: Michael L. Kelly Esq. Law Firm: Kirtland & Packard Address: 1900 Avenue of
the Stars 26th Floor City: Los Angeles State: CA ZIP: 90067 Phone: (310) 552-9700
Name: Charles T. Mathews Esq. Law Firm: Mathews & Evans Address: 3660 Wilshire
Blvd. Pnths 'O' City: Los Angeles State: CA ZIP: 90010 Phone: (213) 383-3111
PARTIES
Side                   Party                    Attorney -----
------                 --------- Plaintiff           Lisa Belanger
Charles Mathews Defendant         Marilyn Marks            Michael Kelly
Defendant         Robert Kissinger       Michael Kelly Defendant
The Restaurant Enterprises Michael Kelly

Trials Digest, A Thomson/West business


Los Angeles County Superior Court

 1991 WL 632868 (Cal.Superior), 7 Trials Digest 16

END OF DOCUMENT


© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

RECYCLED

Westlaw.

19 Trials Digest 2d 23                                                                    Page 1

1996 WL 341815 (Cal.Superior), 19 Trials Digest 2d 23

**(Publication page references are not available for this document.)**

Copyright (c) 2007 Thomson/West

Superior Court, Los Angeles County, California.
De Ville vs. City of Compton

TOPIC:
   Case Type: Employment; Sexual Harassment; Employment; Retaliation; Employment;
Termination; Violation of Public Policy

DOCKET NUMBER: TC005294

STATE: California

COUNTY:  Los Angeles

Verdict/Judgment Date: March 13, 1996
JUDGE: Steven Suzukawa

ATTORNEYS:
   Plaintiff: Peter I. Bersin, Law Offices of Sanford M. Gage, Beverly Hills.;
Lawrence E. Heller, Heller & Edwards, Beverly Hills.; Shula Roth-Barash, Law
Offices of Shula Roth-Barash, Beverly Hills.
   Defendant: Wilmont A. Odom, Compton City Attorney's Office, Compton.

SUMMARY:

   Verdict/Judgment: Plaintiff
   Verdict/Judgment Amount: $99,500

Range: $50,000-$99,999

   $10,500 general damages, $73,000 special damages and $16,000 punitive damages.
Plus $151,000 statutory attorney fees.
   Trial Type: Jury
   Trial Length: 13 days.
   Deliberations: 6 days.
   Jury Poll: 11-1 liability; 9-3 damages.

EXPERTS:

   Plaintiff: Nancy Lynn Baker, psychologist, Los Angeles.; Joyce Pickersgill Ph.D.,
economist, Formuzis, Pickersgill & Hunt, Santa Ana, (714) 542-8853.
   Defendant: L. Scott Frazier, psychologist, Beverly Hills.

TEXT:

CASE INFORMATION

FACTS/CONTENTIONS

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1996 WL 341815 (Cal.Superior), 19 Trials Digest 2d 23

**(Publication page references are not available for this document.)**

According to Plaintiff: Plaintiff trainee claimed that she was sexually harassed by defendant Larry Hall during the training program at the Compton Fire Academy. The plaintiff was Carion De Ville, a 32-year-old firefighter trainee. The defendants were the City of Compton; Larry Hall, a fire captain; and Fire Chief Monroe Smith. Plaintiff filed a complaint with the head of the department and the City Manager's Office. In retaliation for filing the complaint, plaintiff was terminated from the training program. Defendants contended that plaintiff was dismissed for being disruptive and having a bad attitude. Defendant Hall denied that he harassed plaintiff.

CLAIMED INJURIES
According to Plaintiff: Emotional distress; anxiety.
CLAIMED DAMAGES
According to Plaintiff: $3,000 past medical; $50,000 future lost income; $100,000 general damages.

SETTLEMENT DISCUSSIONS
According to Plaintiff: Demand: None. Offer: $4,000. Arbitration award: Defense.
EXPERT TESTIMONY
According to Plaintiff: Plaintiff's expert Baker, a psychologist, testified about the retaliatory actions taken by the city and how it violated the Government Code. Baker further testified about the psychological effects of sexual harassment and what constituted a hostile work environment. Plaintiff's expert Pickersgill, an economist, testified on the present value of future lost earnings. The defense expert testified that he conducted an independent examination of plaintiff and found that she suffered no injury and was not sexually harassed.
COMMENTS
According to Plaintiff: All post-trial motions filed by defendants were denied. Plaintiff's counsel took over the case after it was dismissed when the first attorney failed to show up at the scheduled trial. The    court reinstated the case on motion but counsel was given six weeks to get the case ready for trial. Peter I. Bersin provided the information in this report.

Trials Digest, A Thomson/West business

Los Angeles County Superior Court/Compton

 1996 WL 341815 (Cal.Superior), 19 Trials Digest 2d 23

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

RECYCLED 

Westlaw.

35 Trials Digest 2d 27                                                                    Page 1

1997 WL 638867 (Cal.Superior), 35 Trials Digest 2d 27

**(Publication page references are not available for this document.)**


Copyright (c) 2007 Thomson/West

Superior Court, Los Angeles County, California.
Shimazu vs. Amalgamated Acme

TOPIC:
   Case Type: Employment; Sexual Harassment; Employment; Discrimination

DOCKET NUMBER: SC037471

STATE: California

COUNTY:  Los Angeles

Verdict/Judgment Date: June 30, 1997
JUDGE: Sherrill D. Luke

ATTORNEYS:
   Plaintiff: Randy Renick, Hadsell & Stormer, Pasadena.; Dan Stormer, Hadsell &
Stormer, Pasadena.
   Defendant: Ilece Buckley-Weber, Rosner, Owens & Nunziato, Century City.;  Tom A.
Nunziato, Rosner, Owens & Nunziato, Los Angeles.

SUMMARY:

   Verdict/Judgment: Plaintiff
   Verdict/Judgment Amount: $260,000

Range: $200,000-$499,999

   $140,000 actual and compensatory damages awarded to plaintiff Sybil Shimazu as
against both defendants; $120,000 actual and compensatory damages awarded to
plaintiff Annie St. John as against both defendants; and a finding of malice and
oppression against both defendants.
   Trial Type: Jury
   Trial Length: 29 days.
   Deliberations: 6 days.
   Jury Poll: 10-2 St. John; 9-3 Shimazu.

EXPERTS:

   Plaintiff: Monica Ballard, education consultant, Parallax Education, (310) 656-
7070.; Richard Brunelle, forensic chemist, (540) 785-9500.; Barbara Gutek Ph.D.,
hostile workplace consultant, (520) 621-7632.; Anthony Reading, psychologist,
Beverly Hills, (310) 277-3545.; Stephanie Rizzardi, economist, IBAR Settlement Co.
Inc., San Marino, (818) 570-4888.
   Defendant: Not reported.

TEXT:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1997 WL 638867 (Cal.Superior), 35 Trials Digest 2d 27

**(Publication page references are not available for this document.)**

CASE INFORMATION

FACTS/CONTENTIONS

According to Plaintiff: Plaintiffs claimed that defendant owner of a real estate
broker sexually harassed them and that defendant company refused to prevent the
harassment. The plaintiffs were Sybil Shimazu, a 38-year-old administrative
assistant, and Annie St. John, a 33-year-old office manager. The defendants were
Amalgamated Acme dba Epoteen & Associates, a real estate broker, and Michael
Epoteen, the owner and president.
Plaintiffs alleged that they were sexually harassed by defendant Epoteen and that
defendant Amalgamated Acme refused to take any steps to prevent the harassment
despite their repeated opposition and complaints by other employees. Annie St. John
was also harassed on account of her sexual orientation. The harassment included
repeated questioning by Epoteen into plaintiffs' personal lives, incessant sexual
banter and the display of sexually suggestive pictures and sexual paraphernalia.

CLAIMED INJURIES
According to Plaintiff: Emotional distress.
CLAIMED DAMAGES
According to Plaintiff: Loss of income; emotional distress damages.

SETTLEMENT DISCUSSIONS
According to Plaintiff: Demand: $600,000 (CCP 998). Offer: $300,000 during
deliberations.
EXPERT TESTIMONY
According to Plaintiff: Plaintiffs' expert Gutek, a hostile workplace consultant,
testified on how individuals respond to sexual harassment in the workplace.
Plaintiffs' expert Reading, a psychologist, testified to plaintiffs' emotional
distress resulting from defendants' harassment. Plaintiffs' expert Ballard
testified as to the appropriate steps to be taken by an employer when it received a
complaint of sexual harassment. Plaintiffs' expert Brunelle, a forensic chemist and
ink dating expert, testified that the disciplinary memos placed in plaintiff Sybil
Shimazu's personnel file were back-dated. Plaintiffs' expert Rizzardo, a forensic
economist, testified to plaintiffs' economic damages sustained as a result of their
wrongful  termination.
COMMENTS
According to Plaintiff: The case settled for $800,000 on the eve of the punitive
damage phase of the trial. Plaintiffs' counsel reported that the jury verdict in
favor of plaintiff St. John on her sexual orientation discrimination claim was the
first jury verdict in favor of a plaintiff under Labor Code section 1102.5.

Trials Digest, A Thomson/West business

Los Angeles County Superior Court/Downtown (ccw)

 1997 WL 638867 (Cal.Superior), 35 Trials Digest 2d 27

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

RECYCLED

• Westlaw.

JVR No. 805621

2004 WL 3828468 (Unknown State Ct.), JVR No. 805,621

**(Publication page references are not available for this document.)**

Page 1

COPR. (C) 2007 LRP Publications

Unknown State Ct.
HARVEY v. SYBASE INC.
RG04150433
DATE OF TRIAL: October, 2004

TOPIC:

SUMMARY
Outcome: Plaintiff Verdict
Non Verdict Award:
Total Verdict: $1,800,000
Judge Reduced Award To:
Claimed Past Medical:
Claimed Future Medical:
Claimed Past Wage Expense:
Claimed Future Wage Expense:
  Plaintiff's Economist:
  Defendant's Economist:

EXPERT-WITNESSES:

ATTORNEY:
  Plaintiff: Barbara R. Adams, San Francisco, CA
  David J. Becht, San Francisco, CA
  Defendant: Fred W. Alvarez, Palo Alto, CA
  Theodora Rochelle Lee, San Francisco, CA

JUDGE:

RANGE AMOUNT: $1,000,000-1,999,999
STATE: California

COUNTY: Alameda

SUMMARY
PLAINTIFF:
  Sex: Female
  Age: An adult of undetermined age.
  Race: Asian
PRIMARY STATUTE OR GROUND: Race / Color Discrimination-State
SECONDARY STATUTE OR GROUND:
GENERAL ENTITY TYPE: Manufacturing Industry
SPECIFIC ENTITY TYPE: Computer Products
ADVERSE EMPLOYMENT ACTION: Termination, Failure to hire or rehire
AMOUNT OF AWARD AFTER STATUTORY LIMIT:
ATTORNEY'S FEES:
DAMAGES:
Past Medical:
Future Medical:

2004 WL 3828468 (Unknown State Ct.), JVR No. 805,621

**(Publication page references are not available for this document.)**

```
Past Wage: $1,300,000
Future Wage:
Pain and Suffering:
Other:
Total: $1,300,000
  Punitive: $500,000
  Hedonic:
  Other:
  Interest:
  Loss of Services:
```

FACTS:

A female former human resources director, who was of Philippine descent, sued the defendant software company claiming race and sex discrimination, and retaliation in violation of the Fair Employment and Housing Act and state law. The plaintiff alleged that the defendant retaliated against her, wrongfully terminated her, and did not rehire her due to her race and gender. The defendant denied the allegations, and contended that the plaintiff was terminated due to dishonesty and insubordination.

LRP Publications

COURT:

2004 WL 3828468 (Unknown State Ct.), JVR No. 805,621

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.