G. WHITNEY LEIGH (SBN 153457)
BRIAN BRAZIER (SBN 245004)
GONZALEZ & LEIGH LLP
Two Shaw Alley, Third Floor
San Francisco, CA 94105
Telephone: (415) 512-2000
Facsimile:  (415) 512-2001

JUAN ENRIQUE PEARCE (SBN 236228)
PEARCE LAW OFFICES
530 Jackson Street, Second Floor
San Francisco, CA  94133
Telephone: (415) 434-9000
Facsimile:  (415) 434-9010

Attorneys for Plaintiff
KIMBERLEA MCMANIGAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLEA MCMANIGAL, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>MEDICIS PHARMACEUTICAL CORPORATION, a Delaware corporation, ROBERT NEVIN, an individual,<br><br>Defendants. | Case No. 3:07-CV-04874 TEH<br><br>**PLAINTIFF'S OPPOSITION TO MOTION FOR ORDER COMPELLING ARBITRATION AND DISMISSING THE ACTION, OR ALTERNATIVELY, STAYING ACTION** |

## I.    Introduction

In their motion to compel arbitration, Defendants Medicis Pharmaceutical Corporation and Robert Nevin assert that Kimerlea McManigal agreed to submit her claims to arbitration. But Ms. McManigal never entered into or assented to the agreements upon which defendants base their arbitration demand.  Defendants, who offer no credible evidence to support their claim that Ms. McManigal agreed to arbitrate her claims, cannot meet their burden to establish the existence of an arbitration agreement.

Defendants' motion to compel arbitration should be denied.

## II.     Factual Background

Plaintiff Kimberlea McManigal filed suit against her former employer Medicis Pharmaceutical Corporation and supervisor Robert Nevin in California Superior Court on July 23, 2007. Her Complaint alleged three violations to the California Fair Employment and Housing Act based upon Plaintiff's sex, and an additional cause of action for Intentional Infliction of Emotional Distress.

Defendants removed this Action from state court pursuant to 28 U.S.C. § 1332. Subsequent to removal, Defendants' counsel, Fox Rothschild, contacted Plaintiff's counsel to request that Plaintiff agree to arbitrate her claims. In so doing, Defendants' counsel represented that Plaintiff had entered into a Stock Incentive Plan that contained a provision requiring arbitration of all claims.

Contrary to Defendants claims, Plaintiff never entered into this Agreement.[1] Not only did Plaintiff not assent to the Agreement, she never even *saw* this Agreement to which she is an alleged party.

Plaintiff's attorneys contacted Cristina K. Olivella, defendants' counsel, to inform her of this fact.[2] Plaintiff's counsel requested that Defendants provide evidence to support the claim that Plaintiff was party to the Stock Incentive Plan. In response, Ms. Olivella transmitted a copy of a partially filled-in spreadsheet that Defendants contend shows that Plaintiff entered into the Agreement on February 5, 2007.[3]

Defendants did not produce any documentation bearing Plaintiff's signature—written or electronic—that demonstrates Plaintiff's agreement. Similarly, Defendants did not attempt to authenticate the spreadsheet in any manner whatsoever.

On January 21, 2008, Defendants filed a motion to compel arbitration on the theory that

---

[1] *See Declaration of Kimberlea McManigal in Support of Opposition to Motion to Compel Arbitration and Dismissing the Action, or Alternatively, Staying Action* ("McManigal Dec.") at ¶3.

[2] *See Declaration of G. Whitney Leigh in Support of Opposition to Motion to Compel Arbitration and Dismissing the Action, or Alternatively, Staying Action* ("Leigh Dec.") at ¶2.

[3] *Id* at ¶3

1 Plaintiff had entered into two separate agreements that each contained a mandatory arbitration
2 provision.  The first is the Stock Incentive Plan discussed above.  The second is a Stock Option
3 Agreement that Plaintiff never saw, much less agreed to.[4]

4 **III.    Argument**

6 **A.    Defendants bear the burden to prove the existence of an agreement by Ms. McManigal to arbitrate her claims.**

7 It is a settled principle of law that arbitration is a matter of contract.  *United Steelworkers
8 of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960); *Ingle v. Circuit City Stores,
9 Inc.*, 329 F.3d 1165, 1170 (9th Cir. 2003).  Arbitration agreements are subject to all defenses to
10 enforcement that apply to contracts generally.  *Ingle*, 329 F.3d at 1170; 9 U.S.C. 2 (2002).  To
11 evaluate the validity of an arbitration agreement, courts should apply principles that govern the
12 formation of contracts.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995);
13 Ingle, 329 F.3d at 1170.  Ms. McManigal was employed in California, thus the purported
14 agreement to arbitrate must be evaluated under California contract laws.  *Ingle*, 329 F.3d at 1170;
15 *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).  Under California law,
16 Defendants bear the burden of proof to establish that Ms. McManigal entered into a valid and
17 enforceable arbitration agreement.  *Englalla v. Permanente Medical Group.*, Inc. 15 Cal. 14th
18 951, 972 (1997).

19 Both California and federal law allow parties to enter into contracts electronically.[5]  But
20 as with all contracts, a valid electronic signature must establish the signatory's "assent" to the
21 contract's terms.[6]  In order to attribute an electronic signature to a person, the party seeking to
22 attribute the signature must demonstrate that the signature is the act of the person by competent
23 means, *i.e.* a showing of the efficacy of a security procedure applied to determine the person to

---

25 [4] McManigal Dec. at ¶5.
26 [5] 15 U.S.C. § 7001; Cal. Civil Code § 1633.7(b).
27 [6] *See Windsor Mills Inc. v. Collins & Aikman Corp.*, 25 Cal.App. 3d 987 (1972) (A prospective purchaser of an item clicking a keystroke on a computer does not form a contract if the offer did not clearly signify this act constitutes consent).
28

3

**PLAINTIFF'S OPP TO MOTION TO COMPEL ARBITRATION
CASE NO. 3:07-CV-04874 TEH**

which the electronic record or electronic signature was attributable.[7] The effect of an electronic record or electronic signature attributed to a person under subdivision (a) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.[8]

**B.   Ms. McManigal did not agree to arbitrate her claims.**

Defendants' motion to compel arbitration must be denied because Ms. McManigal did not agree to arbitrate her claims. Ms. McManigal did not agree to the "Medicis 2004 Stock Incentive Plan," as defendants summarily contend.[9] Neither did Ms. McManigal agree to the "Stock Option Agreement" that defendants appear to rely upon as an alternate basis to compel Ms. McManigal's waiver of her right to litigate her claims.[10] Since Ms. McManigal did not agree to these agreements, and did not assent to arbitrate her claims against defendants, the Court should deny defendants' motion to compel arbitration.

**C.   Defendants offer no competent evidence to support their claim that Ms. McManigal agreed to arbitrate her claims.**

Defendants offer no reliable evidence to support their contentions that Ms. McManigal gave any assent, much less meaningful assent, to the arbitration provision. The only evidence that defendants proffer is the declaration of Debi Heileman, purportedly a stock plan administrator for Medicis.[11] This declaration comprises multiple self-serving assertions that lack foundation, and is entirely inadequate to prove the existence of an agreement by Ms. McManigal to arbitrate her claims.

In her declaration, Heileman summarily asserts that Medicis offered to grant McManigal restricted stock under an agreement that included a mandatory arbitration provision, through the

---

[7] Cal. Civil Code § 1633.9(a).

[8] Cal. Civil Code §1633.9(b).

[9] Declaration of Kimberlea McManigal In Support of Opposition to Motion for Order Compelling Arbitration and Dismissing the Action, or, Alteratively, Staying the Action, ("McManigal Decl.") at ¶¶2-3.

[10] *Id.*, ¶ 5.

[11] *See* Defendants Motion to Compel Arbitration, at p.6, and supporting Declaration of Debi Heileman.

4

**PLAINTIFF'S OPP TO MOTION TO COMPEL ARBITRATION**
**CASE NO. 3:07-CV-04874 TEH**

1  company's Charles Schwab.  But neither Heileman nor defendants proffer any foundation for

2  this assertion, which is inadmissible hearsay.[12]  Heileman does not claim that she offered the

3  agreement, to Ms. McManigal, or the basis for her claim that Medicis offered the agreement to

4  Ms. McManigal.  Medicis does not explain when they purport to have offered this agreement to

5  Ms. McManigal or how and where they purport that she received it.  In short, aside from

6  Heileman's stark (and inadmissible) assertion, defendants proffer no evidence that Ms.

7  McManigal ever saw the "Medicis 2004 Stock Incentive Plan", much less agreed to it.

8       Likewise, Heileman's summary assertion that Ms. McManigal "accepted (at some

9  unspecified time) a Stock Option Agreement that included an agreement to arbitrate claims" [13]  is

10  simply that, an unsupported (and false) assertion.

11      The "copies of the agreements" attached to th Heileman declaration further undermine

12  defendants' assertion that Ms. McMangigal agreed to arbitration her claims.  Ms. Heileman

13  purports to attach copies of the agreements that they purport that Ms. McManigal received. But

14  defendants do not explain why they lack any record of Ms. McManigal's acceptance of these

15  agreements. Ms. Heileman also attaches a copy of a document from Charles that she contends

16  reflects the date that Ms. McManigal accepted the arbitration agreement, but provides no

17  evidence (1) that she (Ms. Heileman) can authenticate the Charles Schwab "report", (2) that the

18  Charles Schwab report confirm's Ms. McManigal's agreement to the Medicis 2004 Stock

19  Incentive Plan (or her agreement to any other document).  In short, defendants fail entirely to

20  present any evidence to attribute any agreement to arbitrate to Ms. McManigal.

21      Defendants' failure to produce reliable evidence to support any of their contentions is a

22  tack of necessity: none exists -- because Ms. McManigal did not agree to arbitrate her claims.

23  Defendants have not, and cannot, meet their burden to prove that Ms. McManigal agreed to

24  arbitrate her claims.

25

26

---

27  [12] Fed. Rules of Evidence Rules 801, 802 and 901.

28  [13] Heileman Decl., ¶ 4.

**IV.    Even if this Court Finds That Plaintiff Entered Into The Stock Option Plan, the Arbitration Provision of that Agreement Violates California Law and is thus Unenforceable.**

**A.    California contractual law governs the arbitration provision.**

Federal law commands that courts look to state law to determine the validity of contracts—including those with arbitration provisions. *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).

Contained within the Agreement itself is a choice of law provision that states "the Agreement shall be administered, interpreted and enforced under the internal laws of the state of Delaware". On this point, Defendants mount a most timid argument, and, in the end provide an analysis of the validity of the arbitration clause only under California law. Defendants shy away from analyzing this provision under Delaware law for good reason.

To determine questions regarding choice of law, this Ninth Circuit has determined that courts must apply the law of the forum state to so decide. *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 641 (9th Cir. 1988). Fortunately, California law is well-developed in this area and provides clear guidelines for determining when to follow the law of contractual choice.

In *Washington Mutual FA v. Superior Court*, the California Supreme Court set the standard for how California courts must evaluate choice of law contractual provisions. As a threshold issue, the court must determine whether a chosen state has a substantial relationship to the parties or the transaction, or whether there is any other reasonable basis for the parties' choice of law. *Washington Mutual FA v. Superior Court*, 24 Cal.4th 906, 916-917 (2001). If such a relationship is found to exist, the court must then analyze whether California has a "materially greater interest than the chosen state in the determination of the particular issue". *Id*. If so, courts must decline to enforce the choice of law provision and California law govern interpretation of the contract.

In the instant case, there is no ambiguity: California possesses an interest that is materially greater than Delaware's in adjudicating whether FEHA claims are subject to

1  arbitration.  As is discussed below, California common law sets specific conditions that
2  arbitration agreements must follow in order to encompass FEHA claims.  *See Armendariz v.*
3  *Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000).  Delaware is silent as to any
4  special requirements for arbitrating FEHA claims.  In this manner, Delaware is in conflict with
5  California law.
6       Defendants seemingly concede that California law applies in this case.  It is particularly
7  noteworthy that Defendants fail to apply Delaware law to advance their arguments regarding the
8  validity of the arbitration agreement; instead, they rely exclusively on California law to make
9  their case.
10      Based upon the rules set forth in *Washington Mutual FA v. Superior Court*, and given
11 California law's overwhelming interest in determining how and when FEHA claims are subject
12 to arbitration, California law must govern the validity of the arbitration provision itself.
13      **B.**     **The arbitration agreement is unenforceable under *Armendariz*.**
14      The arbitration agreement in dispute impinges on Plaintiff by making her bear substantial
15 costs above and beyond the costs that she would be required to incur if her claims were to
16 proceed in front of a court.  Consequently, this arbitration agreement is invalid and
17 unenforceable.
18      California law imposes certain restrictions on arbitration agreements whenever
19 constitutional or statutory rights are implicated.  On more than one occasion, the California
20 Supreme Court has specifically defined limitations on compulsory arbitration when a claimant
21 sought to enforce his rights under FEHA.  *Armendariz v. Foundation Health Psychcare Services,*
22 *Inc.*, 24 Cal.4th 83, 97, 99 (2000); *see California Teachers Assn. v. State of California*, 20
23 Cal.4th 327, 355 (1999).   In these cases, the Court has been careful to balance the due process
24 rights of the claimants with the contractual rights of an arbitration agreement.
25      As the Court in *Armendariz v. Foundation Health Psychcare Services* opined:
26 
27 > "the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court.  This rule will ensure that employees bringing FEHA claims will not be deterred by costs greater than the
28

>     usual costs incurred during litigation, costs that are essentially imposed on an
>     employee by the employer."

*Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 110-111 (2000)(emphasis in original).

In the instant case, the arbitration provision requires the Plaintiff to: 1) arbitrate her claims in Arizona; and 2) "pay an amount equivalent to the filing fee in Arizona District Court, plus one-half of the expense of the transcript, and any other amounts deemed fair and reasonable by the arbitrator." *See Leigh Dec.* at ¶5.

If the Plaintiff were to prosecute her claims in either California Superior Court, or the in the U.S. District Court, Northern District of California, she would not be required to expend these funds as this arbitration clause commands. It will add substantial cost to the prosecution of Plaintiff's case if she is made to pursue her claim in Arizona. Similarly, she would be forced to pay one-half of the expense of the transcript for the proceeding and *any other amounts deemed fair and reasonable by the arbitrator*.

As the California Supreme Court has made clear, an individual may not be forced to incur "any type of expense" that the employee would not otherwise be required to pay. Thus, this arbitration provision is invalid under California law and cannot be given effect.

**C.    It is proper for this Court to consider the *Armendariz* factors at this time.**

Defendants argue that this Court need not apply the Armendariz factors, as such an analysis is more fitting for the arbitrator to consider.

This position stands in stark contrast to the California Supreme Court's ruling in *Armedariz*. The *Armendariz* Court unambiguously stated that the imposition of arbitration fees is contrary to public policy which thereby constitutes grounds for invalidating an arbitration agreement. The Court concluded its analysis by stating, "we hold that the cost issues should not be resolved at the judicial review stage but when a court is petitioned to compel arbitration." *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83, 110 (2000).

Contrary to Defendants' desires, then, this Court should exercise its authority in this proceeding to determine the validity of the arbitration clause and whether or not the additional

8

**PLAINTIFF'S OPP TO MOTION TO COMPEL ARBITRATION
CASE NO. 3:07-CV-04874 TEH**

costs imposed upon Plaintiff invalidate said agreement.

### V. Conclusion

For the foregoing reasons, plaintiff respectfully requests that defendants' motion to compel arbitration be denied.

Dated: February 4, 2008                                    Respectfully submitted,


By: /s/ G. Whitney Leigh
    G. WHITNEY LEIGH
    Attorneys for Plaintiff
    KIMBERLEA MCMANIGAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
**PLAINTIFF'S OPP TO MOTION TO COMPEL ARBITRATION
CASE NO. 3:07-CV-04874 TEH**