IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KIMBERLEA MCMANIGAL,

          Plaintiff,

      v.

MEDICIS PHARMACEUTICAL CORPORATION, et al.,

          Defendants.

NO. C07-4874 TEH

ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION

      This matter came before the Court on February 25, 2008, on Defendants' motion to compel arbitration and dismiss or stay this action. After carefully considering the parties' written and oral arguments, governing law, and the record in this case, the Court now DENIES the motion for the reasons discussed below.

**BACKGROUND**

      Plaintiff Kimberlea McManigal filed this action in San Francisco Superior Court on July 23, 2007. She alleges claims of unlawful sex discrimination and harassment under California's Fair Employment and Housing Act ("FEHA"), as well as a claim for intentional infliction of emotional distress, against Defendants Medicis Pharmaceutical Corporation and Robert Nevin. Defendant Medicis timely removed the case to this Court on September 20, 2007, and this Court has diversity jurisdiction under 28 U.S.C. § 1332. At the time of removal, Defendant Nevin had not been served; however, he has since been served, has joined in Medicis' answer to the complaint, is represented by the same counsel as Medicis, and does not contest removal.

      Defendants now move to compel arbitration of Plaintiff's claims under 9 U.S.C. § 4. Defendants assert that agreements to arbitrate were contained in both an agreement

1  purportedly accepted by Plaintiff when she was granted 150 shares of unrestricted stock on
2  February 7, 2006, as well as in a stock option agreement that Defendants contend Plaintiff
3  accepted on an unspecified date.

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") provides that, "an agreement in writing to submit to arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[1]  9 U.S.C. § 2.  Although the agreement must be in writing, it need not be signed by the parties. *Ngheim v. NEC Electronic, Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994).

"Under § 4 of the FAA, a district court must issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue." *United Computer Sys., Inc., v. AT & T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002).  Because Plaintiff was employed in California, California contract law governs whether a valid agreement to arbitrate exists.[2]  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

Where, as here, a party opposes a motion to compel arbitration on grounds that the parties did not form an agreement to arbitrate, the court must give that party "the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting with approval *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980) (footnotes omitted)).  "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.*  If "a genuine issue of material fact on the issue of whether a contract

---

[1] The parties do not dispute that the FAA applies to the purported agreements to arbitrate in this case.

[2] The purported agreements contain Delaware choice-of-law provisions, but the parties agree that the Court's analysis of this case should be governed by California, rather than Delaware, law.

2

containing an arbitration clause exists . . . the Court must proceed summarily to trial to determine whether a contract to arbitrate has been formed." *Dreyer's Grand Ice Cream, Inc. v. Ice Cream Distributors of Evansville*, Case No. C07-0140 CW, 2007 WL 2753727, at *4 (N.D. Cal. Sept. 19, 2007); *see also* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.").

**DISCUSSION**

Plaintiff does not dispute that the claims she alleges in this case would be covered by the purported arbitration agreements if such agreements were found to exist. Indeed, both agreements state that the mandatory arbitration clauses cover claims arising under "all federal, state, or local laws, regulations statutes, or policies prohibiting employment discrimination and/or harassment, (including, without limitation, discrimination or harassment based on race, sex, national origin, religion, age, or disability) and/or unlawful retaliation" and "any and all claims for personal, emotional, physical, or economic injury." Heileman Decl. Ex. 1 at ¶¶ 11(A)(3), (5) (restricted stock agreement); *id.* Ex. 3 at ¶¶ 6.2(c), (e) (stock option agreement).

Plaintiff instead opposes Defendants' motion to compel arbitration on grounds that, first, she never agreed to either of the purported agreements Defendants cite in their papers and, second, that even if she did agree to the arbitration clauses at issue, the clauses would be unenforceable under California law. The Court addresses each argument in turn below.

**I.    Whether an Agreement to Arbitrate Exists**

Debi Heileman, a stock plan administrator employed by Medicis, states that she has personal knowledge of the following:

> Medicis offered to grant an award of restricted stock under the Medicis 2004 Stock Incentive Plan ("Restricted Stock Agreement" or "Agreement") to Kimberlea McManigal through the company's Charles Schwab webpage. In consideration of the grant of stock award, the Restricted Stock Agreement included a provision for the mandatory arbitration of claims under the

3

> Agreement. The Schwab webpage allowed Ms. McManigal the opportunity to accept the Agreement electronically by clicking an "accept" button at the bottom of the webpage. Attached hereto as Exhibit 1 is a true and correct copy of the electronic form Restricted Stock Agreement (the "Agreement").
>
> On February 5, 2007, Ms. McManigal accepted the Agreement electronically through the Schwab webpage. Attached hereto as Exhibit 2 is a true and correct copy of a report from Charles Schwab showing the date and time that Ms. McManigal accepted the Agreement.

Heileman Decl. ¶¶ 2-3.

Plaintiff disputes that she entered into or even saw the Agreement. McManigal Decl. ¶ 3. In addition, to the extent that Heileman's testimony is offered as evidence of Plaintiff's acceptance of the Agreement, Plaintiff objects to and moves to strike such testimony as hearsay, lacking foundation, and not being the best evidence.

Plaintiff's arguments are partially correct. On the one hand, Heileman appears to be a competent witness, based on her own personal knowledge as Medicis' stock plan administrator, to testify that Plaintiff was offered stock options on a certain date, and that Plaintiff was offered the opportunity to view the Agreement and accept it electronically through the company's Charles Schwab webpage.

Heileman's testimony regarding Plaintiff's acceptance of the Agreement, however, is questionable and not admissible. Heileman states that Exhibit 2 to her declaration contains the date and time that Plaintiff accepted the Agreement, when it, in fact, lists only the date. In addition, Defendants assert that Exhibit 2 is a business record not subject to hearsay rules, but the exhibit shows a "create date" of September 17, 2007 – seven months after Plaintiff's supposed acceptance on February 5, 2007, and, not coincidentally, the day before Defendants' counsel contacted Plaintiff's counsel to request arbitration of this case. Thus, Exhibit 2 is not, as Defendants contend, a contemporaneous business record under Federal Rule of Evidence 803(6). Absent Exhibit 2, Heileman has failed to lay any foundation for her personal knowledge of the date of Plaintiff's alleged acceptance of the Agreement.

Defendants may ultimately be able to provide competent evidence of Plaintiff's acceptance of the Agreement, but they have not yet done so. Defendants argue in their reply

4

that Plaintiff must have accepted the Agreement because she does not dispute that she received 150 shares of unrestricted stock.  However, there is no evidence in the record that the only way for Plaintiff to have received such stock was by accepting the Agreement.  Without such evidence, and in light of Plaintiff's declaration that she never saw the Agreement, the Court cannot say that Plaintiff's receipt of the stock indicates that she must have seen and accepted the Agreement.

Defendants also contend that Plaintiff agreed to arbitrate by accepting a Stock Option Agreement.  The evidence of acceptance of this second purported agreement is even more scant:  Heileman does not provide a copy of any report (even one that is hearsay) purporting to list an acceptance date; does not say whether the agreement was offered to Plaintiff electronically or otherwise; and does not even provide a date on which Plaintiff supposedly accepted the agreement.  As with the Restricted Stock Agreement, Plaintiff declares that she "had never seen this Stock Option Agreement to which I am an alleged party until I reviewed Debi Heileman's declaration in support of Defendants' motion." McManigal Decl. ¶ 5.  Based on the record presented by the parties, the Court therefore finds that whether Plaintiff entered into the Stock Option Agreement with Defendants is a disputed fact.

Thus, when viewing the evidence in a light most favorable to Plaintiff, disputed facts remain concerning the existence of an agreement to arbitrate.  Although Defendants are correct that the FAA does not require an arbitration agreement to be signed by the parties, there must nevertheless be an agreement.  Consequently, the Court is unable to grant Defendants' motion to compel arbitration at this time; instead, the appropriate course of action would ordinarily be to "proceed summarily to the trial" of whether the parties made an agreement to arbitrate.  9 U.S.C. § 4.

## II. Whether the Arbitration Clause is Unenforceable

However, because there would be no need for a trial on whether the parties entered into an arbitration agreement if any such agreement would be unenforceable, the Court now turns to the enforceability of the purported agreements.  Under governing California law:

5

> when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court. This rule will ensure that employees bringing FEHA claims will not be deterred by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer.

*Armendariz v. Foundation Health Psychcare Svcs., Inc.*, 24 Cal. 4th 83, 110-11 (2000). Plaintiff contends that the purported agreements violate this rule, and are therefore unenforceable, because they require Plaintiff to arbitrate her claims in Phoenix, Arizona, and to "pay an amount equivalent to the filing fee in Arizona District Court, plus one-half of the expense of the transcript, and any other amounts deemed fair and reasonable by the arbitrator." Heileman Decl. Ex. 1 at ¶¶ 11(C)(1), (10); *id.* Ex. 3 at ¶¶ 6.4(a), (j).

Defendants initially argue that the cost and venue provisions are issues to be decided by the arbitrator rather than the Court. Defendants rely on *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), for this point, but their argument is unfounded. Unlike the issue in that case – whether class arbitrations were permitted under the agreement – the issues here are not simply about "what *kind of arbitration proceeding* the parties agreed to"; rather, they go to "whether the parties have a valid arbitration agreement at all," which is a "gateway matter[]" to be decided by the Court. *Id.* at 452; *see also Armendariz*, 24 Cal. 4th at 110 ("[W]e hold that the cost issues should be resolved not at the judicial review stage but when a court is petitioned to compel arbitration.").

Defendants next concede that the cost and venue provisions "may not meet the *Armendariz* standard," Mot. at 10, but explain that Medicis has offered to pay the full cost of arbitration and that Defendants have also agreed to waive the venue provision. Defendants argue that these two provisions are severable from the remainder of the agreements and their existence need not invalidate the entire arbitration agreements.

However, although Plaintiff failed to respond to Defendants' severability argument in her opposition, the two cases relied on by Defendants to support severability are distinguishable from this case. While it is possible to sever unconscionable provisions from

6

an arbitration agreement, that is only the proper course of action where the unconscionability does not permeate the entire agreement. *Armendariz*, 24 Cal. 4th at 124-25. In both cases relied on by Defendants, the court found no unconscionable provisions other than the ones to be severed. First, in *Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1133 (C.D. Cal. 2006), the court severed venue and cost provisions where "nothing else in the agreement is patently unfair to the employee, and nothing suggests that the agreement was drafted with the purpose of depriving employees of the right to litigate their claims." The court further noted that mutuality, one of the primary factors in determining whether unconscionability permeated an agreement, was present in that case. *Id.* Similarly, in *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 102 (2003), the court severed an unconscionable portion of the arbitration agreement requiring payment of fees after concluding that the plaintiff "failed to demonstrate the existence of additional substantive unconscionable provisions in the arbitration procedures or that the agreements were permeated with unfairness."

In this case, by contrast, the purported arbitration agreements are not mutual; they provide that only claims by the employee against the corporation – and not claims by the corporation against the employee – are subject to mandatory arbitration. Heileman Decl. Ex. 1 at ¶ 11(A) (stating that the agreement "includes all legally actionable claims that the Grantee may currently, or in the future, have against the Corporation," without also including all claims that the Corporation may have against the Grantee); *id.* Ex. 3 at ¶ 6.2 (same, but with "Participant" and "Company" substituted for "Grantee" and "Corporation," respectively). Defendants offered to stipulate to the mutuality of the purported agreements, but the California Supreme Court explicitly rejected such an approach:

> [W]hether an employer is willing, now that the employment relationship has ended, to allow the arbitration provision to be mutually applicable, or to encompass the full range of remedies, does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy. Such a willingness "can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it."

*Armendariz*, 24 Cal. 4th at 125 (citation omitted).

7

As in *Armendariz*, the arbitration agreements at issue here contain more than one unlawful provision, which "indicate[s] a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage," and there is no way to remove the unconscionable non-mutuality provision by simply striking or restricting provisions of the agreements. *Id.* at 124-25. "Rather, the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms." *Id.* at 125. This is not permissible under California law, *id.*, and the Court therefore cannot sever the cost and venue provisions and enforce the remainder of the purported agreements to arbitrate.

**CONCLUSION**

Accordingly, with good cause appearing, Defendants' motion to compel arbitration is DENIED. Although disputed factual issues exist regarding whether the parties entered into an agreement to arbitrate, no trial on that issue is necessary because the purported agreements, even if found to exist, would be unenforceable under California law.

IT IS FURTHER ORDERED that:

1. The parties shall file a stipulation and proposed order selecting an ADR process on or before **March 10, 2008.**

2. The parties shall appear for a further case management conference on **June 16, 2008, at 1:30 PM.** They shall meet and confer and file a joint case management statement on or before **June 9, 2008.**

**IT IS SO ORDERED.**

Dated: 03/03/08

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

8